In re JALDA, INC., a Florida corporation, f/k/a Southeast Performance Wheel Distributors, Inc., et al., Debtor.

Herbert S. FREEHLING, Trustee, Plaintiff,

v.

ASSOCIATES COMMERCIAL CORPORATION, a Delaware corporation, Defendant.

Bankruptcy No. 82–02464–BKC–SMW. Adv. No. 84–0006–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

March 29, 1984.

John R. Camp, Jr., Joseph L. Rebak, Miami, Fla., for defendant.

Herbert Stettin, Miami, Fla., for trustee.

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard upon an adversary proceeding pursuant to Part VII of the Interim Bankruptcy Rules wherein the Trustee sought to recover money or property and to determine the validity, priority or extent of a lien or other interest in property claimed by the Defendant, Associates Commercial Corporation (hereinafter "Associates") and sought an accounting. Associates answered, raised seven Affirmative Defenses, counterclaimed for reformation in the alternative, moved to strike the Trustee's claim for an accounting, made a demand for jury trial and moved for a transfer to the District Court. This Court denied Associates' Motion to Transfer and tried the issues raised by the aforesaid pleadings on February 8, 1984, and having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel; and, being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

This Court has jurisdiction over these proceedings pursuant to Title 28 of the United States Code § 1471 and has jurisdiction of the parties hereto. The Plaintiff is the duly appointed and acting Trustee in Bankruptcy for Jalda, Inc., a Florida corporation, and D & A Tires, Inc., a Florida corporation, as co-partners, trading as Ray's Tires Company, a partnership (hereinafter "Ray's"), a debtor under Chapter 7.

On August 6, 1981, Ray's was a partnership composed of Jalda, Inc., GRH Tires, Inc. and D & A Tires, Inc. Under the terms of the Partnership Agreement of Ray's (Associates' Exhibit "A"), the partnership was to be managed and all partnership decisions were to be made by a majority of a Management Board. The Management Board was composed of the three Presidents of the three corporate general partners. Herbert Weiner and G. Ray Huffman were Presidents of Jalda, Inc. and GRH Tires, Inc. on August 6, 1981 and as such, constituted a majority of the Management Board.

Prior to August 6, 1981, Associates and Ray's entered into negotiations whereby Associates was to provide Ray's with a line of credit for use in its business. On August 6, 1981, various documents were executed by Associates and Ray's. The documents which created the financing arrangement were the Loan and Security Agreement (Trustee's Exhibit "2"), an Accounts Rider (Trustee's Exhibit "3") and an Inventory Rider (Trustee's Exhibit "4"). These documents are hereinafter referred to as the "Financing Agreements".

The typewritten portion of the Loan and Security Agreement was set up for signatures as follows:

RAY'S TIRES COMPANY, a Florida (Borrower) Partnership

_____
(Partner)
By:_____
Title:_____

_____
(Partner)
By:_____
Title:_____

In each instance, there was the signature of Herbert Weiner on the line above one of the typewritten words "(Partner)" and on the line above the other typewritten word "(Partner)" was the signature of G. Ray Huffman. No other words or indications were made of any capacities or entities.

Thereafter, Ray's was unable to meet its financial obligations to Associates and on

September 28, 1982, Associates and Ray's entered into a Voluntary Surrender of Collateral to Secured Lender (Trustee's Exhibit "8") whereby Ray's surrendered its inventory and accounts receivable to Associates.

The Trustee alleged that Associates did not have a valid security interest in the property of Ray's since Ray's was a partnership composed of corporate general partners and the documents wherein the security interest was allegedly created were not signed by the Presidents of the corporate general partners in a corporate capacity, but rather were signed by the Presidents without indicating their capacity.

Associates' position is first that under the Partnership Agreement, the Agreements were valid as signed; second, that the Presidents of the corporate general partners, with actual authority, executed the Agreements on behalf of the corporate general partners and thus bound the corporate general partners and the partnership; and third, that the corporate general partners and thus the partnership ratified the terms of the Agreements. Associates' counterclaim was for reformation in the event that it did not prevail on any one of those three possibilities.

■ Under the terms of the Partnership Agreement, Herbert Weiner and Ray Huffman as a majority of the Management Board could and did bind Ray's when they executed the Financing Agreements. The Court finds that it was not required that they indicate that they were signing as members of the Management Board, since the provisions of the Partnership Agreement had no such requirement. When Weiner and Huffman executed the Financing Agreements, they granted a security interest in inventory and accounts receivable of Ray's to Associates.

On August 3, 1981, Associates recorded with the Secretary of State of the State of Florida, a UCC–1 Financing Statement naming Ray's Tires Company as Debtor. The Financing Statement covered the inventory and accounts receivable of Ray's (Trustee's Exhibit "5" and Defendant's Exhibit "B").

Based upon the foregoing, the Court finds that Associates did in fact have a valid and enforceable security interest in the inventory and accounts receivable of Ray's.

The Court's determination that Associates had a valid and enforceable security interest is supported by the evidence even aside from the provisions of the Partnership Agreement discussed above. The credible and uncontradicted evidence at trial showed that Herb Weiner and G. Ray Huffman were authorized signatories for two of the corporations which formed the majority of the partners of Ray's. It was also established that monies advanced by Associates on the loan which was secured by the Financing Agreements were credited to the account of Ray's. The assets which were pledged to secure the loan belonged to Ray's and Associates relied on Ray's ownership of those assets in entering into the Financing Agreements. It was clearly the intent of both parties that Ray's be bound by the Financing Agreements. Based upon these facts it is clear that the signatures of Weiner and Huffman, without any indication of corporate authority were sufficient to bind the corporations and thus bind the partnership. *In re: Jam Fine Furniture, Inc.* 19 B.R. 578 (Bkrtcy. S.D.Fla.1982). In *Jam Fine* the presidents of two corporate partners signed a Security Agreement in which the partnership was shown as the borrower. However, the signatures of the two individuals had no indication of a corporate capacity. There the Court held at p. 580:

> The documents and testimony make it clear that Walter Lippman and Herbert Tashman, the two individuals who executed the Security Agreement were in fact authorized signatories for the corporations which formed the partnership which is the herein Debtor; that advances made by the bank on the loan which the Security Agreement was given to secure were in fact credited to the account of the Debtor; and the Court

therefore finds that the absence of the names of the general partners of the Debtor's as signatories to the Security Agreement is not fatal to the validity of the Security Agreement or to the perfection of the Bank's security interest.

The Trustee urged that the Court in *Jam Fine* was unaware of the holding in *Rex Printing, Inc.*, 14 B.R. 403 (Bkrtcy.N.D., Ind.1981), and that *Rex* should be controlling. The Court disagrees. In both *Rex* and this case, the properly filed UCC 1 Financing Statement showed the name of the Debtor and was notice to the world. In *Rex*, however, the underlying Security Agreement was held to be defective not only because it did not reflect execution by an officer or agent of the debtor corporation *but also* because it did not contain the name of the debtor. Here there is no question but that the name of Ray's was correctly shown on both the Financing Statement and on the Loan and Security Agreement, and the Court has already determined that the execution of the Financing Agreements was proper. *Rex*, therefore, is not controlling.

■ The above determinations have been reached without the Court having to consider the affirmative defense of ratification. Nevertheless, if it were necessary to reach that issue, the Court would find that even if there were some technical irregularities in the execution of the Financing Agreements, there was formal ratification and an acceptance of the benefits of the Financing Agreements. Any conduct which tends to show, on the part of a corporation, an intention to adopt or affirm the action of its officer or agent may constitute ratification. *See*, 8 Fla.Jur.2d *Business Relations*, §§ 324–333.

The ratification was formally declared in the corporate resolutions executed on the same date as the Financing Agreements. (Trustee's Composite Exhibit "6".) The corporate general partners clearly ratified the Financing Agreements, and they and Ray's all accepted the benefits of the financing.

Additional evidence of ratification is found in a letter from Ray's dated September 24, 1981, in which Ray's authorized Associates to pay off Congress Financial Corporation, the predecessor financer of Ray's (Associates' Exhibit "B"). This authorization to pay Congress Financial Corporation was signed by Rays Tires Company by G. Ray Huffman as President of G.R.H. Tires, Inc., and by Herbert Weiner, as President of Jalda, Inc. There is no dispute that this letter was written and signed by Messrs. Weiner and Huffman on behalf of their respective corporations. There is also no dispute that pursuant to this authorization, Associates did in fact pay to Congress Financial the sum of $1,358,637.27 on September 24, 1981.

Further, both Mr. Weiner and Mr. Leavitt testified that there were almost daily wire advances from Associates to Ray's bank accounts. These advances were continuous during the course of their relationship. Mr. Weiner further testified that at one point there was in excess of $2,000,000.00 owed to Associates. None of this testimony was controverted.

Any of the above factors is a clear showing of ratification by both Jalda, Inc. and G.R.H. Tires, Inc. and therefore Ray's, of the terms of the Financing Agreements.

Since the Court has determined that the instruments were valid and enforceable as written, it is unnecessary to consider Associates' alternative counterclaim for reformation. Nevertheless, if it were necessary to resolve that issue, the Court would find, on the evidence presented, that Associates would be entitled to reformation.

■ Reformation is available if one can show that a contract or agreement fails to express the true intention of the parties to the instrument because of fraud, mutual mistake, accident or inequitable conduct. *Malt v. R.J. Mueller Enterprises, Inc.*, 396 So.2d 1174 (4th Fla. DCA, 1981).

■ Assuming arguendo that the Financing Agreements, as executed, failed to bind Ray's to their terms, the uncontradicted evidence at trial showed that both Asso-

ciates and Ray's intended, at the time the instruments were signed, that Ray's be bound by their terms. If the Agreements failed to accomplish their intended purpose of binding Ray's, there was a mutual mistake.

The Trustee concedes that if this were a simple action for reformation between Ray's and Associates that reformation would be proper; he contends, however, that since the Trustee's rights have intervened, reformation is improper. The Trustee's reliance in this regard on *Burleson v. Brogdon*, 364 So.2d 491 (1st Fla. DCA, 1978); *Gennaro v. Leeper*, 313 So.2d 70 (2d Fla. DCA, 1975); and *Holley v. May*, 75 So.2d 696 (Fla.1954), is misplaced. Those cases stand for the well recognized principle that reformation is improper and cannot be claimed against a third party bona fide grantee *without notice*. Here, there is no dispute that as of August 3, 1981, a UCC–1 Financing Statement was of record with the Secretary of State of Florida in the name of Ray's Tires Company. Thus, the Trustee cannot claim the status of a bona fide purchaser without notice and therefore avoid reformation. *See, generally*, 79 A.L. R.2d 1180.

Since Associates was a secured creditor, the Trustee's claim for fraudulent transfer must fail. Likewise, since it was undisputed that the value of the assets received by Associates pursuant to the Surrender of Collateral to Secured Lender (Trustee's Exhibit "8") was less than the amount of Associates' secured debt, the Trustee's claim for preference must fail.

In view of these findings, the Trustee's demand for an accounting and Associates' Motion to Strike that demand are moot. Based upon the foregoing, the Court finds in favor of Associates. A final judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.